## IN THE UNITED STATES DISTRICT COURT FOR
## THE WESTERN DISTRICT OF OKLAHOMA

THE ESTATE OF LAURA RATLEY,
et al.,

     Plaintiffs,

v.

DHAFER M. AWAD and
SHAMROCK FOODS COMPANY, an
Arizona Limited Liability Company,

     Defendants.

Case No. CIV-19-265-PRW

## ORDER

This case comes before the Court on Defendants' Fourth Motion for Protective Order (Dkt. 147) and Plaintiffs' Combined Motion to Compel (Dkt. 154). For the reasons that follow, Defendants' Motion (Dkt. 147) is **GRANTED** and Plaintiffs' Motion (Dkt. 154) is **DENIED**.

### *Background*

This case arises out of a car crash, the details of which have been extensively discussed in previous orders.[1] Shortly after learning of the accident, Defendant Shamrock Foods Company contacted Jones, Gotcher, & Bogan., P.C. ("JGB")—Shamrock's current counsel in this case. Shamrock alleges that it contacted JGB because "Shamrock

---

[1] *See* Order (Dkt. 90), at 1–4; Order (Dkt. 189), at 1–2.

immediately anticipated there would be litigation from the accident" based on the "nature" of the accident and "the fact that two young adult passengers of the other vehicle perished in the accident[.]"[2] That same day, JGB contacted Stratton, Moore & Painter, Inc. ("SMP"), an accident investigation firm, "to assist in defending the anticipated litigation."[3] SMP employees soon traveled to the accident site and began investigating the accident. Shamrock has now designated two SMP employees as expert witnesses, and SMP has produced a written report detailing their investigation.

The three discovery requests now at issue relate to JGB's investigation into the accident. The first dispute centers around written interrogatories sent by Plaintiffs to Defendants.[4] The interrogatories sought to elicit answers on three questions related to Shamrock and JGB's investigation of the accident. The second dispute concerns Plaintiffs' attempt to depose Michael Copeland, an attorney at JGB and counsel of record for Shamrock.[5] Plaintiffs allege that Copeland was involved in the early investigation of the accident, and therefore, is an "on-site fact-witness" who has information relevant to the claims in this case.[6] The third dispute regards Plaintiffs' attempt to depose a corporate representative of JGB under Rule 30(b)(6) of the Federal Rules of Civil Procedure. [7]

---

[2] Defs.' Mot. for Protective Order (Dkt. 147), at 4.

[3] *Id.* at 5.

[4] *See* Pls.' Mot. to Compel (Dkt. 154), at 31–39.

[5] *See* Ex. 2 (Dkt. 147).

[6] Pls.' Resp. (Dkt. 155), at 15.

[7] *See* Ex. 1 (Dkt. 147).

Plaintiffs point out JGB's early involvement in the investigation and claim JGB has relevant, discoverable information. Both deposition notices also request that the deponents produce the same six categories of documents related to any investigation of the accident by Shamrock, JGB, or other third party working in concert with Defendants.[8]

Defendants initially answered Plaintiffs' interrogatories.[9] But in response to the deposition notices, Shamrock filed a motion for protective order, seeking to prohibit both the depositions and the related requests for documents.[10] Shamrock points out that depositions of an opposing party's counsel are disfavored and argues that much of the testimony the depositions seek to elicit tread upon the attorney-client and work-product privileges. So too, Shamrock argues, for the documents requested.

In response, Plaintiffs filed a motion to compel both depositions and the related document requests.[11] Plaintiffs' motion to compel also seeks to compel Shamrock to provide more thorough responses to the interrogatories. Following the completion of briefing on both motions, the Court ordered Shamrock to produce the allegedly privileged documents at issue for *in camera* review.[12] Shamrock produced the documents, and the Court has completed its review. Since both motions address the same discovery requests, the Court addresses the motions together.

---

[8] The documents requested are collected at Ex. 2 (Dkt. 147), at 3.

[9] *See* Ex. 1 (Dkt. 168).

[10] *See* Defs.' Mot. for Protective Order (Dkt. 147).

[11] *See* Pls.' Mot. to Compel (Dkt 154).

[12] Order (Dkt. 236), at 1–2.

### *Legal Standard*

Parties may obtain discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case."[13] Though the scope of discovery is broad, District courts have discretion to limit discovery where the discovery sought is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive."[14]

While Rule 37(a) of the Federal Rules of Civil Procedure provides that "a party may move for an order compelling disclosure or discovery," protective orders are governed by Rule 26(c)(1). That rule provides that "upon motion by a party or by the person from whom discovery is sought . . . and for good cause shown, the court . . . may make any order which justice requires to protect a party or a person from annoyance, embarrassment, oppression, or undue burden or expense." Among other things, such an order may "forbid" the discovery sought,[15] "forbid[] inquiry into certain matters, or limit[] the scope of . . . discovery to certain matters."[16] The party "seeking a protective order bears the burden to show good cause for it."[17] "The good cause standard of Rule 26(c) is highly flexible, having

---

[13] Fed. R. Civ. P. 26(b)(1).

[14] Fed R. Civ. P. 26(b)(2)(C).

[15] Fed. R. Civ. P. 26(c)(1)(A).

[16] Fed. R. Civ. P. 26(c)(1)(D).

[17] *EEOC v. Midwest Reg'l Med. Ctr., LLC*, 2014 WL 1745080, at *2 (W.D. Okla. Apr. 30, 2014).

been designed to accommodate all relevant interests as they arise."[18] Ultimately, "control

of discovery," including whether to grant a motion for protective order or motion to

compel, "is entrusted to the sound discretion of the trial courts."[19]

### Discussion

The Court begins by addressing the depositions of Copeland and JGB's Rule

30(b)(6) representative, turns next to the documents requested, and concludes by

addressing the interrogatories.

### I.    Deposition of Michael Copeland

Plaintiffs seek to compel the deposition of Michael Copeland. Defendants seek a

protective order prohibiting the deposition. As this Court explained in a previous discovery

dispute in this case,[20] attempts to depose counsel for an opposing party raise serious

concerns,[21] and courts must carefully scrutinize any such attempts. "[W]here, as here, a

---

[18] *Rohrbough v. Harris*, 549 F.3d 1313, 1321 (10th Cir. 2008) (quotation marks & internal citations omitted).

[19] *Martinez v. Schock Transfer & Warehouse Co.,* 789 F.2d 848, 850 (10th Cir. 1986).

[20] The Court recently granted a protective order prohibiting the deposition of Shamrock's corporate counsel. *See* Order (Dkt. 235), at 5–7.

[21] *See Shelton v. Am. Motors Corp.,* 805 F.2d 1323, 1327 (8th Cir. 1986). As this Court previously explained, the relevant issue "is not whether the plaintiffs [seek] privileged information." *Boughton v. Cotter Corp.,* 65 F.3d 823, 830 (10th Cir. 1995). Rather, the question is whether it is necessary for the Court to protect the Defendant from the "unnecessary burden[s]" inherent in deposing their counsel. *Id.* While concerns over potentially privileged material are one basis to grant a protective order, many of the other relevant burdens justifying a protective order are independent and unrelated to the precise boundaries of privilege. *Id.* at 829–30. The question here on Copeland's deposition is whether a protective order is appropriate under the factors laid out in Rule 26(c) and *Boughton*, not whether particular pieces of information are privileged.

party seeks to depose an opposing party's attorney, courts have required the party seeking the deposition to make a specific showing of need to justify the deposition."[22]  Specifically, the party seeking to take the deposition must, at the very least, demonstrate all three *Shelton* factors: (1) that no other means exist to obtain the information than to depose opposing counsel; (2) that the information sought is relevant and nonprivileged; and (3) that the information is crucial to the preparation of the case.[23] At the very least, a protective order is appropriate when the party seeking the deposition fails to prove at least one of the three factors.[24] But even if all three *Shelton* factors are met, a protective order may still be appropriate where other factors counsel towards prohibiting a deposition.[25]

---

[22] *Corsentino v. Hub Int'l Ins. Servs., Inc.*, 2018 WL 6597231, at *3 (D. Colo. Mar. 12, 2018).

[23] *Thiessen v. Gen. Elec. Cap. Corp.*, 267 F.3d 1095, 1112 (10th Cir. 2001) (noting the Tenth Circuit's adoption of the test set out in *Shelton*).

[24] *See Boughton,* 65 F.3d at 830. This is because "[t]aking the deposition of opposing counsel not only disrupts the adversarial system and lowers the standards of the profession, *but it also adds to the already burdensome time and costs of litigation*," *Shelton*, 805 F. 2d at 1327 (emphasis added), the exact burdens that Rule 26(c) is designed to remedy.

[25] *See Boughton,* 65 F.3d at 830 n.9 ("In holding that the trial judge generally at least has discretion to issue such a protective order when the *Shelton* criteria are met we also need not and do not, by implication, exclude the possibility that a trial judge would have discretion to issue such a protective order in other appropriate situations where the criteria are not met."); *see also Simmons Foods, Inc. v. Willis*, 191 F.R.D. 625, 630 (D. Kan. 2000) ("[T]he *Boughton* court declined to hold that a court *must* permit parties to depose opposing counsel upon a showing that the three [*Shelton*] factors are satisfied. As interpreted by this Court, *Boughton* dictates that, even when a party satisfies all three of the *Shelton* factors, courts may prohibit such depositions 'in other appropriate situations.'").

Plaintiffs have failed to satisfy at least one of the *Shelton* factors—that no other means exist to obtain the information they seek from Copeland—and, therefore, a protective order prohibiting Copeland's deposition is appropriate. Plaintiffs claim that it is necessary to depose Copeland for two reasons. First, Plaintiffs argue that no other means exist to obtain the information they seek from Copeland because he was "an on-site fact-witness" and a "first-hand witness to the scene [of the accident] in the immediate aftermath[.]"[26] But Copeland was not a first-hand witness; he has never traveled to the to the site of the accident.[27] He therefore cannot provide any first-hand knowledge of the accident, let alone be the only means of obtaining that information.[28]

Second, Plaintiffs suggest that they must depose Copeland because he was involved in "conversations that surround the facts of the investigation[.]"[29] But again, Plaintiffs have not carried their burden to show that no other means exist to obtain this information. The

---

[26] Pls.' Resp. (Dkt. 155), at 15. Plaintiffs repeatedly make this claim—without any support. The Court is *deeply* concerned with these representations by Plaintiffs' attorneys. Attorneys have a duty to have a good-faith basis for representations they make to the Court. Yet Plaintiffs' attorneys never once provide a single piece of evidence for their repeated assertion that Copeland went to the scene of the accident.

[27] *See* Defs.' Reply (Dkt. 158), at 5.

[28] In any event, Plaintiffs have already received extensive, first-hand information regarding the scene of the accident, including a deposition of Mr. Awad, the police report prepared by a neutral third party on the scene, and several photos and videos taken immediately after the accident. Plaintiffs also could depose the first responders, who arrived at the scene and conducted an investigation prior to any of Shamrock's investigators arriving at the scene. Plaintiffs have not identified what other information they hope to secure regarding the scene of the accident that they could not secure through these or other non-attorney means.

[29] Pls.' Resp. (Dkt. 155), at 15.

investigation of the crash was conducted by SMP employees, whom Defendants designated as expert witnesses under Rule 26(a)(2) of the Federal Rules of Civil Procedure.[30] SMP produced a written report detailing their investigation. And to the extent that the report does not provide sufficient detail regarding the investigation of the accident, Plaintiffs have the right to depose the SMP employees designated as expert witnesses.[31] Indeed, such a deposition has already been scheduled. Plaintiffs provide no reason as to why details surrounding the crash that arose in the course of the investigation cannot be obtained from the persons who actually conducted the investigation.[32] Therefore, given the special considerations surrounding deposing an opponent's counsel and Plaintiffs' failure to prove that no other means exist to obtain the information they seek, the Court finds that a

---

[30] *See* Defs.' Final Expert List (Dkt. 119), at 1. To be clear, to the extent that SMP's investigation is relevant to the claims that remain in the case, it is relevant as to evidence from the scene of the accident and how that would pertain to the negligence claim against Awad. Recognizing this reveals that Plaintiffs have other non-attorney sources that they could receive this information from. *See supra* note 28.

[31] *See* Fed. R. Civ. P. 26(b)(4)(A); *accord In re Syngenta AG MIR 162 Corn Litig.*, 2020 WL 7316100, at *3 (D. Kan. Dec. 11, 2020).

[32] At times, Plaintiffs appear to suggest that they can clear step 1 of *Shelton* because Copeland may be the only means to obtain information related to how Shamrock itself responded to the accident. This argument is similar to a position maintained by Plaintiffs earlier in this litigation that Shamrock was required to undertake a certain type of investigation. But it is unclear why the numerous Shamrock employees deposed by Plaintiffs would be unable to provide this information. And in any event, as the Court has reminded the parties on several occasions, the remaining discovery period is "limited to the claims that remain in this case." *See* Order (Dkt. 235), at 1–2; Order (Dkt. 130), at 1; Order (Dkt. 101), at 2. Plaintiffs provide no argument as to how such information is relevant to the two claims that remain: (1) the negligence claim against Awad and (2) the negligent entrustment claim against Shamrock. Thus, a deposition premised on such information would fail *Shelton*'s requirement that the information be relevant.

protective order prohibiting the deposition of Copeland is appropriate and that Plaintiffs' motion to compel the deposition should be denied.[33]

## II.    *Deposition of JGB's Rule 30(b)(6) Representative*

Plaintiffs also seek to depose a representative of JGB under the auspices of Rule 30(b)(6) of the Federal Rules of Civil Procedure. That rule provides the framework for deposing a representative for an organization. The party seeking to take the deposition must "describe with reasonable particularity the matters for examination."[34] The organization must then designate one or more persons to testify on its behalf, and that person must "testify about information known or reasonably available to the organization" on the topics identified.[35]

This is not the usual Rule 30(b)(6) case. Plaintiffs seek to use a tool typically deployed against corporate parties to a lawsuit, or those who hold evidence relating to a suit, against the law firm of their opponent. Shamrock argues that this is a backdoor attempt to depose its trial counsel. The Court agrees and finds that good cause exists to grant a protective order prohibiting the deposition of JGB.

Functionally, Plaintiffs are attempting to use Rule 30(b)(6) to depose opposing counsel through other means. Although JGB could designate a member of the firm not

---

[33] Because the Court finds that Plaintiffs failed to prove that no other means exist to obtain the information, the Court need not address Plaintiffs' claims that the information sought is relevant, non-privileged, or crucial to the preparation of the case. *See* Order (Dkt. 235), at 7 n.25.

[34] Fed. R. Civ. P. 30(b)(6).

[35] *Id.*

connected with this case as its representative, that person would have to "testify about information known or reasonably available" to the law firm about this case—in effect, what the lawyers working on the case know.[36] The Court sees little practical difference between the Rule 30(b)(6) deposition and the deposition of Shamrock's trial counsel.

Because this is in effect an attempt to depose opposing counsel, the Court finds that the *Shelton* factors are also applicable to this deposition.[37] And like the deposition of Copeland, Plaintiffs are unable to meet their *Shelton* burden. Plaintiffs' notice of deposition and filings make clear that they seek to elicit the same type of information from JGB's Rule 30(b)(6) representative that they seek to elicit from Copeland. Thus, for the same reasons, Plaintiffs have not carried their burden to show that no other means exist to obtain this information. Information related to the crash and subsequent investigation are available from a variety of other non-attorney sources.

Even if *Shelton*'s heightened standard did not apply, a protective order would still be appropriate under the standard Rule 26 factors. Wholly apart from *Shelton*, Rule 26 requires courts to "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the discovery sought . . . can be obtained from some other source that is more convenient [or] less burdensome[.]"[38] Other Rule 26 factors

---

[36] *Id.*

[37] *Cf. Rhea v. Apache Corp.*, 2016 WL 11671908, at *1–2 (E.D. Okla. Nov. 30, 2016) (applying *Shelton* to a Rule 30(b)(6) deposition of the law firm representing one party).

[38] Fed. R. Civ. P. 26(b)(2)(C). Circuits that have not adopted *Shelton* regularly deploy this requirement to prohibit or limit depositions of lawyers associated with one party. *See, e.g.*, *In re Subpoena Issued to Dennis Friedman*, 350 F.3d 65, 68–72 (2d Cir. 2003).

also support a protective order. Deposing opposing counsel's law firm would impose a severe burden, disrupt the adversarial system, oppress and distract from Shamrock's trial preparation, and run the risk of revealing privileged information.[39] Therefore, the Court finds that a protective order prohibiting the deposition of JGB's Rule 30(b)(6) representative is appropriate.

## III.   *Document Requests*

In addition to the depositions, Plaintiffs also seek six categories of documents from both Copeland and JGB. Having concluded that a protective order precluding the depositions is appropriate, the Court must determine whether Plaintiffs may nevertheless

---

[39] Plaintiffs go to great lengths to argue that at least some of the information they seek would not be privileged because the early stages of JGB's investigation were done for ordinary business purposes. The Court conducted an *in camera* review of the 113 items in Shamrock's privilege log, many of which relate to the very beginnings of JGB's "investigation." These documents make clear that from very early on "anticipated litigation [was] the driving force" behind the investigation, *Wikel v. Wal-Mart Stores, Inc.,* 197 F.R.D. 493, 496 (E.D. Okla. 2000), "because 'some articulable claim, *likely* to lead to litigation, [had] arisen," *Sandra T.E. v. S. Berwyn Sch. Dist. 100*, 600 F.3d 612, 622 (7th Cir. 2010) (quoting *Binks Mfg. Co. v. Nat'l Presto Indus., Inc.,* 709 F.2d 1109, 1120 (7th Cir. 1983)). Even if there may have been a narrow period early in the investigation that was arguably not privileged, the line as to where privilege attached would be incredibly murky. Any deposition of JGB would inherently run a major risk of disclosing privileged information—not just disputedly privileged information, but information that even Plaintiffs would likely concede is privileged. Under the "highly flexible" good cause standard of Rule 26(c) that is "designed to accommodate all relevant interests," *Rohrbough*, 549 F.3d at 1321, the Court finds that this is a relevant interest weighing in favor a protective order. But to be clear, the Court finds that even if this factor is ignored, the other Rule 26 factors would constitute good cause for issuance of a protective order. The risk of disclosing privileged information is "extra icing on a cake already frosted." *Yates v. United States*, 574 U.S. 528, 557 (2015) (Kagan, J., dissenting).

compel the production of the documents they request.[40] Plaintiffs request a variety of documents related to any investigation of the accident by Shamrock, JGB, or other third party working in concert with Defendants. Defendants represent that they have disclosed all non-privileged documents requested by Plaintiffs and that the only requested documents withheld are those that fall within the attorney-client or work-product privilege.[41]

The relevant documents are 113 email "strings" beginning the day of the accident and concluding roughly a year after the accident. "Because of the nature of the subject accident and the fact that two young adult passengers of the other vehicle perished in the accident," Shamrock maintains that it "immediately anticipated there would be litigation from the accident."[42] As such, Shamrock maintains that privileges attached from the very outset. Plaintiffs maintain that the early stages of the investigation were conducted for ordinary business purposes, not anticipated litigation, and the documents are therefore not subject to any relevant privileges. Although Plaintiffs do not draw a clear line, they appear to maintain that no privileges attached "before the present lawsuit was filed."[43] The Court

---

[40] The documents at issue are those identified in Defendants' Privilege Log. *See* Ex. 3 (Dkt. 168), at 1; Ex. 4 (Dkt. 168), at 1.

[41] *See* Ex. 2 (Dkt. 168).

[42] Defs.' Mot. for Protective Order (Dkt. 147), at 4.

[43] This is the line Plaintiffs draw in their requests for production. *See, e.g.*, Ex. 2 (Dkt. 147), at 3. And it is a line they repeat throughout their briefs. *See, e.g.*, Pls.' Resp. (Dkt. 155), at 6, 9, 10, 13, 15. As explained below, this is not the relevant line under current doctrine. Privilege often extends to anticipated litigation and thereby prior to a lawsuit being filed.

conducted *in camera* review of the documents at issue to determine whether the documents are privileged and thereby exempt from disclosure.[44]

    *1. The relevant documents are protected by the attorney-client and work-product privileges.*

In diversity cases, attorney-client privilege is controlled by state law.[45] Under Oklahoma law, "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client."[46] The mere fact that an attorney is involved in a communication or that an attorney-client relationship exists does not make every communication between an attorney and client privileged.[47] For a communication to be privileged, the client must believe that they are "consulting a lawyer in [their legal] capacity" and must "manifest[] [an] intention to seek professional legal advice."[48] Thus, the "communication between the lawyer and client must relate to legal advice or strategy sought by the client."[49] Communications with an attorney "not as a lawyer but as . . . a business adviser" are not privileged.[50]

---

[44] *See* Fed. R. Civ. P. 26(b)(1).

[45] *See White v. American Airlines, Inc.,* 915 F.2d 1414, 1424 (10th Cir. 1990).

[46] Okla. Stat. tit. 12, § 2502(B).

[47] *Scott v. Peterson,* 126 P.3d 1232, 1234 (Okla. 2005); *see also Motley v. Marathon Oil Co.,* 71 F.3d 1547, 1550–51 (10th Cir. 1995); *Lindley v. Life Invs. Ins. Co. of Am.*, 2010 WL 1741407, at *4 (N.D. Okla. Apr. 28, 2010).

[48] 1 McCormick on Evidence § 88 (8th ed. 2020); *see Chandler v. Denton,* 741 P.2d 855, 865 (Okla. 1987).

[49] *United States v. Johnston,* 146 F.3d 785, 794 (10th Cir. 1998).

[50] 1 McCormick on Evidence § 88 (8th ed. 2020).

"Unlike the attorney-client privilege, the work-product privilege is governed, even in diversity cases, by a uniform federal standard[.]"[51]  As relevant here, "[w]ork-product protection applies to attorney-led investigations when the documents at issue 'can fairly be said to have been prepared or obtained because of the prospect of litigation.'"[52] Importantly, "[t]here is a distinction between precautionary documents 'developed in the ordinary course of business' for the 'remote prospect of litigation' and documents prepared because 'some articulable claim, *likely* to lead to litigation, [has] arisen.'"[53] "Only documents prepared in the latter circumstances receive work-product protection."[54]

Even in diversity cases, "[w]hether attorney-client privilege or attorney work product protects certain information from discovery often turns on the same set of facts and, consequently, courts frequently merge their analyses."[55] This is particularly the case where, as here, the primary dispute is whether the confidential communications are primarily or predominantly "business" rather than "legal" in nature, or put differently, whether the "primary motivation" for creating a document is for a "business" rather than

---

[51] *Frontier Ref., Inc. v. Gorman-Rupp Co.*, 136 F.3d 695, 702 (10th Cir. 1998) (quoting *United Coal Cos. v. Powell Constr. Co.*, 839 F.2d 958, 966 (3d Cir. 1988)). Rule 26(b)(3)(A) recognizes that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)."

[52] *Sandra T.E.*, 600 F.3d at 622 (quoting *Logan v. Commercial Union Ins. Co.,* 96 F.3d 971, 976–77 (7th Cir. 1996)).

[53] *Id.* (quoting *Binks Mfg.*, 709 F.2d at 1120).

[54] *Id.*

[55] *Lindley*, 267 F.R.D. at 395.

"litigation" purpose.[56] Thus, the dispositive question in this case for the applicability of both the attorney-client and work-product privilege is whether the driving force behind or predominating purpose of the communications and documents was the rendition of professional legal services for some articulable claim that was likely to lead to litigation.[57]

After reviewing the documents *in camera*, the Court finds that all 113 emails at issue are covered by either the attorney-client or work-product privilege. The emails indicate that Shamrock and its counsel were discussing articulable, likely legal claims, the need to preserve evidence, and the need to conduct an investigation to defend against those likely claims mere hours after the accident. This predominantly legal concern continued for the entire one-year period of the communications—from the day of the accident to after Plaintiffs (through counsel) began pursuing legal claims. There is no indication in the emails that the investigation conducted by JGB and SMP was carried out for a primarily business purpose—i.e., to prevent reoccurrences, to improve future driver safety or

---

[56] As to attorney-client privilege, the key dispute between the parties is whether the communications were "made for the purpose of facilitating the rendition of professional legal services to the client," or for other business purposes. *See* Pls.' Resp. (Dkt. 155), at 7–14. And for work-product, the dispute is likewise over whether the documents were prepared for likely litigation or an ordinary business purpose. *See* Pls.' Resp. (Dkt. 155), at 7–14. As Plaintiffs' point out in their briefing, on the question of whether the driving force behind these communications was a legal concern or ordinary business purpose, the standards under both Oklahoma's attorney-client privilege doctrine and the federal work-product doctrine are substantially the same. *See* Pls.' Resp. (Dkt. 155), at 4–5.

[57] Where the client is a business, lawyers often play a mixed role involving law and business advice. "[W]here business and legal advice are intertwined," the question is whether "the legal component predominates[.]"1 McCormick on Evidence § 88 (8th ed. 2020); *see Sedco Int'l, S. A. v. Cory*, 683 F.2d 1201, 1205–06 (8th Cir. 1982).

efficiency, or to respond to regulatory obligations.[58] Simply put, it is clear that the communications were primarily "made for the purpose of facilitating the rendition of professional legal services"[59] and that the driving force behind the preparation of the documents was "some articulable claim, *likely* to lead to litigation, [that had] arisen.'"[60]

Plaintiffs' attempts to resist this conclusion are unavailing. Throughout their briefs, Plaintiffs latch on to statements made by a Shamrock employee (Branch Mueller) that Plaintiffs construe as demonstrating a policy of hiring outside counsel to conduct investigations of "significant accidents," [61] particularly those involving fatalities.[62] This policy, Plaintiffs argue, demonstrates that the hiring of JGB was an ordinary business practice for business purposes and thereby not protected by privilege. But Mueller's statement does not appear to be indicative of what occurred in this instance. Mueller was not the one who contacted and retained JGB to work on this matter. Nor was he ever involved in or mentioned in any of the communications at issue. The communications between Copeland and the Shamrock employee who initially contacted him, as well as subsequent communications with other Shamrock employees, make clear that Shamrock enlisted JGB to assist with the legal claims that were likely to follow.  Because the question

---

[58] For example, communications related to the retention of SMP on the day of the accident (including the fees and services SMP would provide) focused entirely on litigation-related investigation and testimony, not insurance or internal business-related consulting.

[59] Okla. Stat. tit. 12, § 2502(B).

[60] *Sandra T.E.*, 600 F.3d at 622 (quoting *Binks Mfg.*, 709 F.2d at 1120).

[61] Ex. 3 (Dkt. 147), at 11.

[62] *Id.* at 15.

of privilege is a fact-specific inquiry that must focus on the circumstances at issue, the Court finds the communications involving the actual enlistment of JGB in this case far more relevant to the purpose of JGB's retention than a few stray comments by an induvial in no way involved in the retention at issue.[63]

In any event, even if Shamrock did have a "policy" of retaining legal representation following an accident involving fatalities, that does not necessarily mean that retaining legal counsel was for a business, rather than legal, purpose. As Shamrock explains, accidents involving fatalities almost always give rise to litigation. A business who has a policy of always retaining legal counsel in a particular scenario to defend against legal claims that almost always result from that scenario can still be acting for the "purpose of facilitating the rendition of professional legal services." The fact that the business has a "policy" in that regard does not transform a lawyer providing legal services into a "business adviser."[64]

---

[63] Mueller's deposition provides several other reasons to give less weight to his testimony. At several points, Mueller makes statements that seem to either misunderstand the question asked or be in tension with other established facts. There may be a good reason for his apparent confusion. As he explains later in his deposition, the accident at issue in this case was an extremely rare occurrence: Mueller recalled only one other accident during his tenure involving multiple fatalities. Ex. 3 (Dkt. 147), at 19. This was not an everyday occurrence that he or Shamrock regularly navigated.

[64] While the fact that litigation was likely to ensue from an accident involving multiple fatalities "does not automatically equate to the existence of a work-product privilege being attached to the investigation," privilege does apply when anticipated litigation is the "driving force behind the generation of those documents" relating to the investigation. *Morris v. Union Pac. R.R. Co.*, 2006 WL 8459204, at *2 (E.D. Okla. July 21, 2006). And as explained above, review of the emails makes clear that anticipated litigation was the driving force behind JGB and SMP's investigation and the related documents.

Plaintiffs also rely on a series of cases compelling the production of documents created in the course of an insurance investigation for the proposition that investigations conducted for insurance purposes are more business than legal in purpose (and are thereby not protected by privilege). Although some of the emails at issue here involve a Travelers Insurance agent, a review of the emails makes clear that the insurance investigation was not the driving force behind the relevant communications or investigation of the accident. The emails indicate that Copeland hired SMP to investigate the accident prior to the insurance agent's involvement. And later emails indicate that the investigation conducted by SMP was being run separately from any investigation that may have been being conducted by the insurer. The emails also reveal that Copeland took careful steps to avoid becoming involved in roles typically reserved for an insurance investigator. Unlike the cases relied on by Plaintiffs, the documents at issue here were not the result of an investigation conducted by or on behalf of an insurer. An insurance investigation was not the "driving force" behind the documents or communications at issue.[65] The driving force was the need to defend against articulable, likely legal claims.

---

[65] *Id.*; *Wikel*, 197 F.R.D. at 496. Plaintiffs make no argument that the inclusion of an insurance agent in the communications somehow destroys the confidentiality of the communications. *See* George L. Blum, *Waiver of Insured-Insurer Communications Privilege* 48 A.L.R. 7th Art. 7 (2020) (noting that the inclusion of an insurer in otherwise privileged attorney-client communications generally does not waive the confidentiality of the communication).

2. *Plaintiffs have not demonstrated a substantial need to override the existing privilege.*

In the alternative, Plaintiffs briefly argue that even if the work-product privilege applies to the documents requested, they have a substantial need that overrides that privilege. Rule 26(b)(3)(A)(ii) does provide a limited exception to work-product privilege where the party seeking the privileged material "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Plaintiffs argue that they have met this standard. They point out that evidence related to the scene of the accident is relevant to their claims and maintain that they "have no other means of obtaining this evidence."[66]

While it is true that evidence related to the scene of the accident is relevant to the negligence claim, Plaintiffs have failed to carry their Rule 26 burden of showing that they "cannot, without undue hardship, obtain the[] substantial equivalent [of the evidence in the privileged material] by other means."[67] As the Court explained above, there are several other means available to obtain evidence related to the scene of the accident. Plaintiffs have access to persons involved in the accident. They have access to the first responders who were on the scene shortly after the crash (and well before the investigators from SMP arrived) who documented the status of the scene and produced a detailed report that Plaintiffs have access to. And as explained above, Plaintiffs also have the right to depose SMP's investigators and have access to their report detailing the investigation. In light of

---

[66] Pls.' Resp. (Dkt. 155), at 17.

[67] Fed. R. Civ. P. 26(b)(3)(A)(ii).

all these other available avenues, Plaintiffs' conclusory statement that they "have no other means of obtaining this evidence" fails to meet their Rule 26 burden.[68]

## IV.   *Responses to Interrogatories*

Plaintiffs also seek to compel more detailed responses to the three interrogatories discussed above. Rule 33(b)(4) of the Federal Rules of Civil Procedure requires that a party "fully" answer each interrogatory. Plaintiffs maintain that all three responses are insufficient and "request detailed responses to the three[] interrogatories as to those individuals who participated in, contributed to, visited, or were involved with the investigation" of the accident.[69] The Court addresses each interrogatory in turn and concludes that Defendants do not need to provide additional responses.

### 1.   *Interrogatory 1*

Interrogatory 1 asked Defendants to "[p]rovide a list of names, addresses, and phone numbers of all Shamrock employees, third party contractors, agents, representatives, experts, vendors, other people, and attorneys who visited the scene of the wreck within

---

[68] The only case cited by Plaintiffs on this point, *Morris v. Union Pac. R.R. Co.*, 2006 WL 8459204 (E.D. Okla. July 21, 2006), likewise does nothing to help carry Plaintiffs' Rule 26 burden. *See* Pls.' Resp. (Dkt. 155), at 16–17 (citing *Morris*). *Morris* merely held that the documents at issue were not "subject to the protections of the work-product doctrine because they were documents generated in the ordinary course of the Defendant's business." 2006 WL 8459204, at *3. The portion of *Morris* Plaintiffs rely on is a passing statement in a footnote that notes Rule 26(b)(3)(A)(ii)'s exception exists and clarifies that the party seeking the documents made no attempt to establish a substantial need. *Id*. at *1 n.2. A single footnote stating the mere existence of Rule 26(b)(3)(A)(ii)'s exception in a case where that exception was not at issue in no way assists Plaintiffs' in demonstrating a substantial burden.

[69] Pls.' Mot. to Compel (Dkt. 154), at 31–39.

seven days of the wreck."[70] The Court finds that Defendants fully answered this interrogatory. Although initially asserting an objection on relevance grounds, Defendants proceeded to answer the question, stating that employees of SMP visited the scene of the wreck and that "[t]o Shamrock's knowledge, no other person visited the scene of the wreck within the time frame set forth in this interrogatory."[71] This response fully answers the question posed, and therefore, there is nothing for the Court to compel on this interrogatory.

   2.  *Interrogatories 2 & 3*

Interrogatories 2 and 3 asked Defendants to identify all persons "who contributed or were involved in Shamrock's investigation of the subject wreck"[72] or "who participated in the post-crash investigation conducted by Shamrock or any of [its] agents, third party contractors, [] representatives, experts, vendors, other people, or attorneys."[73] Although Defendants provided a detailed answer to this question, they declined to name certain "non-witness consulting experts" who Shamrock's counsel communicated with.[74] Ordinarily, "the identity of informally consulted non-witness experts with whom a party conferred in anticipation of litigation, but did not employ, do not have to be disclosed in discovery."[75] Plaintiffs argue that the experts at issue are "unlikely to be merely non-witness consulting

---

[70]  *Id.* at 32, 37.

[71] Ex. 1 (Dkt. 168), at 2–3.

[72] Pls.' Mot. to Compel (Dkt. 154), at 33, 38.

[73] *Id.* at 34, 39.

[74] Ex. 1 (Dkt. 168), at 5.

[75] *West v. Burch*, 2005 WL 8157531, at *3 (W.D. Okla. May 4, 2005) (citing *Ager v. Jane C. Stormont Hosp. & Training Sch. for Nurses*, 622 F.2d 496, 501 (10th Cir. 1980)).

experts."[76] So, Plaintiffs ask the Court to conduct *in camera* review to determine the status of each expert and whether they are exempt from disclosure.

As relevant here, Tenth Circuit precedent delineates between two categories of non-testifying experts: (1) experts informally consulted in preparation for trial but not retained; and (2) experts retained or specially employed in anticipation of litigation or preparation for trial but not expected to be used at trial.[77] If an expert falls within the first category, "discovery is barred."[78] A party may not compel the disclosure of the expert's "identity" or any other information concerning the expert's consultation.[79] The rules regarding discovery of an expert that falls within the second category—one who is actually "retained or specially employed"—are slightly more permissive:

> [T]he identity, and other collateral information concerning an expert who is retained or specially employed in anticipation of litigation, but not expected to be called as a witness at trial, is not discoverable except . . . upon a showing of exceptional circumstances under which it is impracticable for the party seeking discovery to obtain facts or opinions on the same subject by other means.[80]

The party seeking disclosure of the expert information bears "'a heavy burden' in demonstrating the existence of exceptional circumstances."[81]

---

[76] Pls.' Mot. to Compel (Dkt. 154), at 14.

[77] *Ager*, 622 F.2d at 500–01.

[78] *Id.* at 502.

[79] *Id.* at 501.

[80] *Id.* at 503.

[81] *Id.* (quoting *Hoover v. Dept. of Interior*, 611 F.2d 1132, 1142 n.13 (5th Cir. 1980)).

The Court need not decide whether the experts at issue properly fall within the category of experts informally consulted.[82] Even assuming the experts fall outside of that category and its complete bar on discovery, Plaintiffs have not met their "heavy burden" of showing exceptional circumstances exist that require disclosure. Plaintiffs make no attempt to argue that an exceptional circumstance exists here.[83] Nor is it likely that they could. Plaintiffs long ago acquired an expert to testify on topics related to the accident, so it could in no way be "impracticable" for Plaintiffs "to obtain . . . opinions on the same subject by other means."[84] There is also no evidence that certain facts or items reviewed by the experts, if any, have been destroyed or are inaccessible to Plaintiffs' expert.[85] In any event, Plaintiffs have made no attempt to carry their "heavy burden in demonstrating the existence of exceptional circumstances,"[86] and their request for a list of Defendants' non-testifying experts is therefore denied.

---

[82] Because the Court assumes that the experts fall within the category of experts retained or specially employed, it is unnecessary for the Court to conduct *in camera* review. All that review could result in is a finding that the experts are subject to the limited scope of discovery for experts retained or specially employed—the assumption that the Court makes for the purpose of deciding this motion.

[83] The portion of Plaintiffs' brief devoted to this issue focuses solely on whether the experts are truly experts informally consulted and never once attempts to demonstrate an exceptional circumstance requiring disclosure. *See* Pls.' Mot. to Compel (Dkt. 154), at 12–14.

[84] *Ager*, 622 F.2d at 503; *see also id.* at 503 n.8.

[85] *Id.*

[86] *Id.* (quoting *Hoover*, 611 F.2d at 1142 n.13).

23

*Conclusion*

Accordingly, the Court hereby **GRANTS** Defendants' Fourth Motion for Protective Order (Dkt. 147) and **DENIES** Plaintiffs' Combined Motion to Compel (Dkt. 154). Additionally, given the disposition of these two motions, the Court also **DENIES AS MOOT** Defendants' Motion to Continue Depositions (Dkt. 148).

**IT IS SO ORDERED** this 19th day of September 2022.

_____
PATRICK R. WYRICK
UNITED STATES DISTRICT JUDGE